# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRIL GLEN ELLISON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   Case No. CIV-16-267-D |
| | ) |
| JOE M. ALLBAUGH, | ) |
| | ) |
|     Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner Terril Glen Ellison, appearing pro se, has petitioned this Court for a writ of habeas corpus, challenging through 28 U.S.C. § 2254 the constitutionality of his criminal conviction by the State of Oklahoma. *See* Pet. (Doc. No. 1). United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. Respondent has filed an Answer (Doc. No. 9), and this matter is now at issue. For the reasons outlined below, it is recommended that the Petition be denied.

### I.     Relevant Case History

On November 23, 2011, officers of the Oklahoma City Police Department ("OCPD") executed a search warrant and arrested Petitioner at his residence in Oklahoma City. Pet. at 4-5;[1] Vol. II Trial Tr. 10-11, 14-18, 43-45 (*State v. Ellison*, No. CF-2011-6975 (Okla. Cty. Dist. Ct. Aug. 26-28, 2013)) (Doc. No. 11 (conventionally filed)). Following a jury trial in the District Court of Oklahoma County, Oklahoma, Petitioner was

---

[1] Citations to documents filed electronically in this Court use the CM/ECF pagination.

convicted of: (Count 1) possession of a controlled dangerous substance (cocaine base) with intent to distribute, after two prior felony convictions; and (Count 2) possession of proceeds derived from a violation of Oklahoma's Uniform Controlled Dangerous Substances Act ("UCDSA"),[2] after two prior felony convictions. Pet. at 4; Original Record ("OR") (Doc. No. 11) at 160, 188. On October 2, 2013, Petitioner was sentenced to 33 years' imprisonment on Count 1 and 15 years' imprisonment on Count 2, to run concurrently. Pet. at 4; OR 189-92.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). *See Ellison v. State*, No. F-2013-949 (Okla. Crim. App.). The OCCA affirmed Petitioner's conviction and sentence on March 20, 2015. *See* OCCA Summ. Op. (Doc. No. 9-3) at 1-4. Petitioner did not seek postconviction relief in the state courts.

On March 21, 2016, Petitioner filed this federal habeas action, raising two grounds for relief. *See* Pet. at 2, 6-10. Respondent contends, and the record likewise reflects, that the Petition is timely filed. *See* Answer at 2; 28 U.S.C. § 2244(d)(1).

## II. Discussion

### A. Ground One: Sufficiency of the Evidence

In Ground One, Petitioner argues that the evidence admitted at trial was insufficient for a jury to have found beyond a reasonable doubt that he committed the offense charged in Count 2—i.e., possession of proceeds derived from a violation of the UCDSA. *See* Pet.

---

[2] Okla. Stat. tit. 63, §§ 2-101 to 2-904.

2

at 6-8 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Petitioner first raised this argument on direct appeal, and the OCCA denied relief:

> In Proposition One Appellant [argues] that the State's evidence was insufficient to support his conviction for possession of proceeds derived from narcotics violations. We review the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. Applying this standard, the evidence is sufficient. Proposition One is denied.

OCCA Summ. Op. at 2 (citing *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985) (citing and applying *Jackson*)); *see also* 28 U.S.C. § 2254(b)(1).

Where, as here, a § 2254 habeas claim has been adjudicated on the merits by the state courts, a deferential standard of review applies:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.
>
> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

3

federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

The Supreme Court's decision in *Jackson* establishes "the minimum amount of evidence that the Due Process Clause requires to prove the offense" of conviction: under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012); *Jackson*, 443 U.S. at 319; *see also Herrera v. Collins*, 506 U.S. 390, 402 (1993) ("[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.").

As relevant here, the Court's task "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable." *Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009); *accord Hooks v. Workman*, 689 F.3d 1148, 1167 (10th Cir. 2012). The sufficiency of the evidence inquiry is based on the substantive elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 309, 324 n.16. The elements of Count 2 are: (1) knowingly or intentionally (2) receiving or acquiring (3) proceeds (4) derived from a violation of the UCDSA. OR 140; Okla. Unif. Crim. Jury Instruction No. 5-114A (2d ed. 1996 & Supps. 2000); Okla. Stat. tit. 63, § 2-503.1.

At trial, the State presented evidence that when OCPD officers arrested Petitioner at his home following a period of surveillance, they found $1686 in cash on Petitioner's

4

person and both narcotics and drug paraphernalia throughout the residence. Vol. II Trial Tr. 56, 59, 68, 71-73; *see also* State's Exs. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25 (Doc. No. 11). OCPD Sergeant Alexander Edwards testified that, upon receiving tips from "Crime Stoppers" and the community regarding the sale of illegal drugs at an address on Northeast Eleventh Street in Oklahoma City, he investigated and confirmed that Petitioner lived at this address. Vol. II Trial Tr. 11-12. Sergeant Edwards testified that in November 2011, he and a partner began surveillance of the Eleventh Street house. *Id.* at 12-14. Sergeant Edwards further testified that he is trained to identify criminal activity consistent with the sale of illegal narcotics from a residence and that, as a result of his personal surveillance of short-term traffic and apparent transactions occurring at the subject address, he believed Petitioner was selling drugs out of the house. *Id.* at 12-18.

Sergeant Edwards testified that, after this initial surveillance, he caused a confidential informant to attempt to purchase drugs from Petitioner by way of two controlled buys. Sergeant Edwards stated that he gave the informant twenty dollars and dropped him off at the subject address to attempt to purchase illegal narcotics. *Id.* at 18, 37-38. Sergeant Edwards searched the informant before the buy and the informant had nothing upon his person. When the informant returned to Sergeant Edwards after making the buy, the informant handed the officer an off-white substance that later tested positive for crack cocaine. *Id.* at 38-39. Sergeant Edwards searched the informant again and found no illegal substances on the informant's person. *Id.* at 39. He testified that he followed the same routine on the second controlled buy. *Id.*

OCPD Sergeant Edward Porter also participated in the November 2011 surveillance upon Petitioner's residence. Sergeant Porter testified that in the course of watching the house, he personally observed Petitioner making a hand-to-hand narcotics transaction. *Id.* at 154, 155, 158-59, 169-70.

OCPD thereafter obtained a search warrant for the subject address. *Id.* at 40; *see* Ct.'s Ex. 1 (Doc. No. 11). About 2:45 p.m. on November 23, 2011, Sergeant Edwards and multiple other officers executed the warrant at the house on Northeast Eleventh Street. Petitioner was standing in the living room when the officers entered the residence. Vol. II Trial Tr. 42-45.

OCPD Sergeant Aaron Harmon testified that he was one of the officers who entered Petitioner's residence pursuant to the search warrant. *Id.* at 66-67. Sergeant Harmon testified that, in addition to Petitioner, a female was also in the residence, beside the bed in the northwest bedroom. *Id.* at 67-68. In this bedroom, Sergeant Harmon found a cell phone and a cologne bottle with a plastic bag inside containing 4.65 grams of an off-white substance that field-tested positive for crack cocaine. *Id.* at 68. On the nightstand, the officer found a purse or cosmetics bag that also contained a substance that was determined to be crack cocaine. *Id.* at 68-69. Sergeant Harmon further testified he found a receipt, a lease agreement, and a birth certificate, all bearing Petitioner's name, in the dresser. *Id.* at 69.

In the kitchen, on the bottom shelf of an upper cabinet, the sergeant found a bottle labeled onion powder containing two off-white rocks in a small plastic bag. These rocks field-tested positive for crack cocaine. *Id.* at 70-71. In a lower cabinet, inside a drawer,

Officer Harmon testified he found four plastic bag "tear-offs," which he testified are plastic sandwich bags where a corner had been torn off and used to package illegal drugs. *Id.* at 71. In the dining room, Sergeant Harmon found a set of digital scales and a large glass plate with a white residue that field-tested positive for crack cocaine. *Id.* at 72. In the living room, Sergeant Harmon found a razor blade bearing a white residue and two bills from Oklahoma Natural Gas that were addressed to Petitioner at the subject address. *Id.* at 73. He testified that based upon his experience, possession of more than a couple of grams of crack cocaine is indicative of an intent to sell. *Id.* at 79. He further testified that he found no evidence of employment for Petitioner such as pay stubs or tax returns. *Id.* at 82.

OCPD Sergeant Jared Colvard testified he also participated in the search of the residence. Sergeant Colvard testified that during the search he found the sum of $1686 in Petitioner's pants pocket and a cell phone on Petitioner's person. *Id.* at 55-56.

Petitioner challenges the adequacy of the evidence to show that the cash found on his person was "proceeds" "derived" from a narcotics offense. *See* Pet. at 8 (challenging conviction due to a lack of evidence "that the money seized during his arrest came from drug transactions"). But given the evidence and testimony cited above, "a reasonable jury could have regarded the presence of sizable cash, combined with [Petitioner's] lack of a job, as proof that a drug sale had taken place," and the jury "could reasonably find that" Petitioner had been the seller of those drugs, had obtained money from the sale of those drugs, and had "concealed the money by keeping it in his pocket." *Seamster v. Jones*, No. CIV-12-42-F, 2012 WL 1939769, at *3 (W.D. Okla. Apr. 23, 2012) (R. & R.), *adopted*, 2012 WL 1939746 (W.D. Okla. May 29, 2012). Viewing all reasonable inferences

7

therefrom in the State's favor, the OCCA's conclusion that the evidence was sufficient for conviction on Count 2 was not an unreasonable application of *Jackson*. *See* OCCA Summ. Op. at 2; 28 U.S.C. § 2254(d)(1); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (discussing the "twice-deferential standard" that a federal habeas court must apply to a *Jackson* claim that a state court has rejected on the merits); *Hooks*, 689 F.3d at 1166 (describing this standard of review as "deference squared"). Petitioner is not entitled to relief on Ground One.

### B. Ground Two: Disclosure of Identity of Confidential Informant

Prior to trial, Petitioner's defense counsel moved the trial court to require the State to disclose the identity of the confidential informant whom OCPD had sent to attempt two controlled drug buys. OR 67-72; Pretrial Mot. Hr'g Tr. 8-18 (*State v. Ellison*, No. CF-2011-6975 (Okla. Cty. Dist. Ct. Aug. 5, 2013)) (Doc. No. 11). The trial court denied the motion. Pretrial Mot. Hr'g Tr. 18. During questioning of Sergeant Edwards, defense counsel's objection to the officer's testimony regarding the confidential informant was overruled. Vol. II Trial Tr. 18-19, 20-24, 25, 27-36.

On direct appeal, Petitioner argued that "the trial court abused its discretion by failing to require the disclosure of the informant's identify as required by [title 12, section 2510(C)(2) of the Oklahoma Statutes]." Pet'r's Appellate Br. (Doc. No. 9-1) at 13. The OCCA disagreed, holding:

> We review the refusal to order disclosure of the informant for abuse of the trial court's discretion. *Hill v.* [*State*], 1979 OK CR 2, ¶ 16, 589 P.2d 1073, 1077. An abuse of discretion is a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented. *C.L.F. v. State*, 1999 OK CR 12, ¶ 5, 989 P.2d 945, 946. The government privilege

8

> to withhold the identity of an informant is not absolute. Disclosure can be required if the informant is a material witness to a crime with which defendant is charged, or able to give testimony on a material issue. Due process also requires disclosure when necessary and relevant to the defendant's defense. *Corbett v. State*, 1974 OK CR 181, ¶ 10, 527 P.2d 200, 203; 12 O.S.2011, § 2510. Appellant has not alleged facts sufficient to establish the informant's testimony was material to the charges or necessary to his defense. Proposition Two is without merit.

OCCA Summ. Op. at 2-3.

In this habeas action, Petitioner argues that the trial court's ruling violated his rights under the Fourteenth and Sixth Amendments. *See* Pet. at 8-10.[3] It does not appear, however, that the procedural prerequisites for granting habeas relief have been met as to either such challenge. The record reflects that neither claim was raised on direct appeal: before the OCCA, Petitioner raised only a state-law claim of evidentiary error, based exclusively on violation of the Oklahoma Evidence Code rather than of the United States Constitution or federal laws. *See* Pet'r's Appellate Br. at 11-13 (citing Okla. Stat. tit. 12, § 2510). Nor did the OCCA sua sponte reach any federal claims in disposing of Petitioner's direct appeal. *See* OCCA Summ. Op. at 2-3; *see also Alverson v. Workman*, 595 F.3d 1143, 1153 n.3 (10th Cir. 2010) (agreeing with other circuits that "a state appellate court's *sua sponte* consideration of an issue" "satisfies § 2254's exhaustion requirement"). *But see Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005) (holding that the OCCA's rejection

---

[3] Petitioner also argues, as he did on direct appeal in state court, that the trial court misapplied Oklahoma law with respect to the privilege to refuse to disclose the identity of an informant. *See* Pet. at 8-10. But "federal habeas corpus relief does not lie" for such errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); *see* 28 U.S.C. § 2254(a); *Vaughn v. Dinwiddie*, No. CIV-06-202-RAW, 2007 WL 438353, at *4-5 (E.D. Okla. Dec. 11, 2007), *certificate of appealability denied*, 277 F. App'x 820 (10th Cir. 2008).

9

of a state evidentiary claim was an "implicit[] reject[ion]" of "any federal due process challenge" and "an adjudication on the merits under 28 U.S.C. § 2254(d), despite no citation to Supreme Court precedent").

Thus, it does not appear that Petitioner's current Sixth and Fourteenth Amendment challenges as set forth in Ground Two of the Petition were adequately presented to the OCCA as required for proper exhaustion and the granting of habeas relief. *See* 28 U.S.C. § 2254(b)(1); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (noting that a petitioner does not satisfy the exhaustion requirement of § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief"). Because any such federal claims were not presented to and not addressed by the OCCA, the claims likely would be deemed procedurally defaulted (but technically exhausted) if Petitioner now attempted to raise the claims in the state courts. *See* Okla. Stat. tit. 22, § 1086; *Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991).[4]

These procedural issues need not be resolved because, whatever their procedural posture, the federal claims of Ground Two are "clearly without merit" and can be denied

---

[4] Respondent does not address the discrepancy between the state- and federal-court claims but, instead, assumes that Petitioner has exhausted his habeas claims and that the OCCA's ruling constituted an adjudication on the merits of such claims. *See* Answer at 2, 14-18; *cf. Gray*, 518 U.S. at 165-66 (noting that "procedural default is an affirmative defense" that the state must raise or else lose the right to assert).

"without regard to procedural bar." *Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) ("When questions of procedural bar are problematic . . . and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits."); *see* 28 U.S.C. § 2254(b)(2).

With regard to Petitioner's Fourteenth Amendment claim, the withholding of an informant's identity may be a violation of due process, as recognized by the Supreme Court in *Roviaro v. United States*. *See Roviaro*, 353 U.S. 53, 60 (1957). In that case, the Supreme Court "declared that 'fundamental requirements of fairness' require restrictions on the Government's privilege to refuse disclosure of an informant's identity." *Gaines v. Hess*, 662 F.2d 1364, 1368 (10th Cir. 1981) (quoting *Roviaro*, 353 U.S. 53, 60 (1957)); *see Roviaro*, 353 U.S. at 60-61 ("Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."); *cf. Durbin v. Province*, 448 F. App'x 785, 787 (10th Cir. 2011) ("We will only consider state law evidentiary questions on habeas if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." (internal quotation marks omitted)). In determining whether to require the disclosure of an informant's identity, a court must balance "the public interest in protecting the flow of information" against the defendant's "right to prepare his defense." *Roviaro*, 353 U.S. at 62.

In *Roviaro*, the Supreme Court found that it was error to not disclose the identity of an informant who had been "the sole participant, other than the accused, in the transaction charged," and thus the source of essential evidence regarding the offense at issue. *Id.* at

11

64. In this case, however, commission of the crimes charged—possession of illegal narcotics with intent to distribute and possession of proceeds derived from a UCDSA violation—was not proven primarily through information supplied through OCPD's informant. While the OCPD relied on the controlled buys as one basis to obtain the search warrant of Petitioner's residence,[5] Petitioner was not charged with any distribution offense, "the informant was not the only person other than the accused present at the scene" of the charged offenses, and the controlled buy "was . . . simply one in a series of drug sales involving" Petitioner. *Gutierrez v. Moriarty*, 922 F.2d 1464, 1467 (10th Cir. 1991); *Gaines*, 662 F.2d at 1368; *see* OR 20-21. With respect to the *charged* crimes, the critical facts were that Petitioner had illegal narcotics in his house and that Petitioner had money on his person. These facts were proven through the testimony of the multiple OCPD officers who conducted the search of the Eleventh Street house. *Compare* evidence and testimony cited *supra*, *with Gaines*, 662 F.2d at 1368 (finding that a hearing was required as to whether an informant would be an exculpatory witness where the informant was the "only witness" to the charged distribution of drugs from the defendant to a police officer).

"While [the government's] ability to prevent the accused from confronting an informant is not unlimited, disclosure of an informant is not required where the information sought from him or her would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged." *Bernard v. Ray*, 246 F. App'x 553, 556

---

[5] Petitioner does not challenge the propriety of the search warrant. *See* Pet. at 6-10; *cf.* Vol. II Trial Tr. 31 (defense counsel stating that he is "not attacking the search warrant under Franks v. Delaware or anything of that nature").

(10th Cir. 2007) (citation and internal quotation marks omitted) (denying a certificate of appealability on a similar habeas claim). The trial court's failure to order disclosure of OCPD's informant's identity "did not deprive [Petitioner] of his right to a fair trial." *Gutierrez*, 922 F.2d at 1468.

With regard to Petitioner's Sixth Amendment claim, that provision guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination," thus allowing the accused to expose the witness's reasons for testifying and to test the truth of his or her testimony. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted). But guaranteeing an "opportunity for effective cross-examination" is not the same as guaranteeing "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (emphasis and internal quotation marks omitted). Limitations on cross-examination generally are permissible so long as they are "consistent with the concept that the right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial." *See id.*; *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Similarly, "'[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" *Dodd*, 753 F.3d at 985 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). To this end, "'[r]estrictions on a criminal defendant's rights to confront

13

adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Michigan v. Lucas*, 500 U.S. 145, 151 (1991)). However, "the Supreme Court has never questioned the traditional reasons for excluding evidence that may have some relevance." *Id.* And, "'only rarely'" has the Supreme Court held "'that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.'" *Id.* at 986 (alteration omitted) (quoting *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013)). Examples of such a violation include when "the state court either had provided no rationale for the exclusion, could not defend an absurd rule, or had failed to examine the reliability of the specific evidence in that case." *Id.* at 987 (citations omitted).

Here, the state court's refusal to require disclosure because Petitioner had not shown that the informant was "a material witness to the criminal conduct with which" Petitioner had been charged was not an application of an absurd, arbitrary, or disproportionate rule. Okla. Stat. tit. 12, § 2510(C)(2). Rather, "there were rational grounds" for this ruling. *Dodd*, 753 F.3d at 987. The State did not call the confidential informant to testify at the criminal trial, and Sergeant Edwards was specifically prohibited from testifying as to any statements made by the informant to him. Vol. II Trial Tr. 25; *see also id.* at 35-36. Petitioner's counsel was permitted to cross-examine the relevant police officer as to what happened during the controlled drug buys. *Id*. at 46-53, 169-75.

Petitioner thus has not shown that he was unconstitutionally deprived of his right to confront witnesses or his right to present a complete defense. *See Hall v. Jordan*, No. CIV-03-79-HE, R. & R. at 11-13 (W.D. Okla. Jan. 28, 2004), *adopted*, Order (W.D. Okla. May

14

19, 2004), *and certificate of appealability denied*, 143 F. App'x 74 (10th Cir. 2005); *Trujillo v. Lewis*, No. 11-CV-0522 YGR, 2014 WL 4832216, at *16-18, *22-24 (N.D. Cal. Sept. 29, 2014) (rejecting habeas petitioner's argument that denial of an informant's identity prevented him from being able to present a complete defense where the informant did not testify at the petitioner's trial and "the likely value of any evidence obtained as a result of disclosing the informant's identity relative to [the petitioner's] defense was speculative"), *certificate of appealability denied*, No. 14-17080 (9th Cir. Aug. 25, 2015); *cf. Baca v. Texas*, No. MO-08-CV-00036, 2010 WL 11519191, at *9 (W.D. Tex. Oct. 15, 2010) (rejecting ineffective-assistance habeas claim where defense counsel failed to seek disclosure of confidential informant's identity but cross-examined the police officer's use of an informant and attacked the informant's credibility; noting that the identity of the informant "was not necessary to [the petitioner's] ability to raise doubt surrounding the validity of the information provided by the informant").

For all these reasons, Petitioner is not entitled to relief on Ground Two.

## RECOMMENDATION

Accordingly, it is recommended that the Petition for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by December 20, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to

appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 29th day of November, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE